UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CERTIFIED RESTORATION DRY
CLEANING NETWORK, L.L.C.,

    PLAINTIFF,

v.                                                                       CASE NO. 07-10341

TENKE CORP. d/b/a RITE CLEANERS,      HONORABLE SEAN F. COX
and STEPHEN DUBASIK,

    DEFENDANTS.
_____/

## **OPINION & ORDER**

This action, involving a dispute over a written franchise agreement, is currently before the Court on Plaintiff's Motion for Preliminary Injunction and Defendants' Motion for Partial Summary Judgment. The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. For the reasons that follow, both motions shall be DENIED.

## BACKGROUND

A.     <u>The Franchise Agreement</u>:

The parties entered into a written franchise agreement ("the Franchise Agreement") on or about June 6, 2002, under which Certified Restoration Dry Cleaning Network, L.L.C. ("CRDN") awarded Defendants a franchise to operate a "Restoration DC business utilizing the Restoration

1

DC System and [Plaintiff's] Licensed Marks" within a defined geographic territory. (The Franchise Agreement is attached to Pl.'s Motion as Ex. 1). The Franchise Agreement states that the "Restoration DC System" is a restoration dry cleaning system for cleaning smoke, water, and/or odor damaged clothing and other soft goods, from insured casualties, such as house fires. The geographic territory assigned to Tenke was a multi-county area in Ohio and two counties in Pennsylvania.[1]

The Franchise Agreement provides that certain covenants not to compete would apply during the term of the agreement. Specifically, it provides that:

COVENANTS NOT TO COMPETE.

    A.    FOR YOU.

You promise, during the term of this Agreement, to not:

> 1. engage as an owner, partner, shareholder, director, officer, employee, consultant, agent, or in any other capacity in **any other business offering restoration dry cleaning services the same or similar to the services sold by the Franchised Business** (except for other Franchises under Franchise Agreements we enter into with you);

---

[1]Exhibit A to the Franchise Agreement indicates that Tenke's territory is defined as:

1990 U.S. Census Bureau Census Tract
Entire County of Portgage, State of Ohio (39-133)
Entire County of Mahoning, State of Ohio (39-099)
Entire County of Trumbull, State of Ohio (39-155)
Entire County of Geauga, State of Ohio (39-055)
Entire County of Ashtabula, State of Ohio (39-007)
Portion of Cuyahoga, State of Ohio (39-035) as highlighted in blue on the attached map.

(*See* Ex. A to Franchise Agreement). A "Territory Addendum" executed on September 20, 2002, expanded Tenke's territory to also include the counties of Mercer and Lawrence, Pennsylvania.

(Franchise Agreement at § 6 A.)(emphasis added).

The Franchise Agreement allows CRDN to terminate the agreement under certain conditions, and provides for various post-termination obligations. For example, Section 13 B. of the Franchise Agreement provides:

> 13. POST TERMINATION OBLIGATIONS.
> . . . .
> B. MARKS
>
> Upon the termination or expiration of this Agreement, you promise to:
>
> 1. strictly comply with, observe, and abide by all of the provisions of the Covenants Not to Compete as set forth in Section 13.D.;
> . . . .
> 4. immediately refrain from engaging in any contacts with **customers or former customers of the Franchised Business**, **pertaining to the Franchise Business**, whether with respect to collection of accounts receivable, or to provide them services, or for any other purpose whatsoever;
> . . . .
> 6. not operate or do business under any name or in any manner which might tend to give the general public the impression that you are **operating a Restoration DC franchise,** or any confusingly similar business;
> . . . .
> 10. notify the telephone company and all telephone directory publishers of the termination or expiration of your right to use any telephone, telecopy, or other numbers and any telephone directory listing associated with any Mark, and authorize the transfer of these numbers and directory listings to us or, at our direction, instruct the telephone company to forward all calls made to your telephone number to numbers we specify. If you fail to do so, we can take whatever action is necessary, on your behalf and consistent with the Telephone Listing Agreement attached to this Agreement as Exhibit D, to effect these events.

(Franchise Agreement, § 13 B.)(emphasis added). In addition, Section 13 D. provides as follows:

> D. COVENANT NOT TO COMPETE.

> For a period of 24 months from the time of expiration or termination of this Agreement, you promise not to engage as an owner, shareholder, partner, director, officer, employee, consultant, salesperson, representative, or agent or in any other capacity **in any restoration drycleaning business**, within:
>
> 1. the Territory as defined in Exhibit A of this Agreement;
> 2. the geographic area encompassed by the Territories of any Restoration DC Franchisees as of the date of the termination or expiration of this Agreement;
> 3. a geographic area that is contained in a circle having a radius of 25 miles outward from the borders of the Territory as defined in Exhibit A of this Agreement.

(Franchise Agreement, §13 D.)(emphasis added).

The Franchise Agreement requires the following from the franchisee with respect to telephones:

> As part of your local marketing, you promise to acquire and maintain a telephone number that is dedicated to your Restoration DC business and separate and apart from your existing dry cleaning telephone number. In consideration for our granting you a Franchise, you agree to assign to us this dedicated business telephone number as a part of this Agreement (Exhibit D).

(Franchise Agreement, § 2 G.). Exhibit D to the Franchise Agreement provides, in pertinent part, that:

> FRANCHISEE, for valued received, hereby assigns to FRANCHISOR all of FRANCHISEE's right, title, and interest in and to **those certain telephone numbers and regular, classified, or other telephone directory listings** (collectively, the "Telephone Numbers and Listings") **associated with FRANCHISOR's trade and service marks and used from time to time in connection with the operation of the Franchised Business**.

(Ex. D to Franchise Agreement)(emphasis added).

B.  Termination of the Franchise Agreement and Events that Followed:

CRDN states that it terminated the Franchise Agreement on November 6, 2006, as a result of Tenke's failure to make required payments to CRDN. (*See* Ex. 2 to Pl.'s Br.). In its

November 6, 2006 Termination Letter, CRDN summarized several actions that it believed the Franchise Agreement required upon termination. (Ex. 2 to Pl.'s Motion).

In response, Defendants' counsel advised that Dubasik was "taking all steps to disassociate with CRDN, including the 'cease and desist using all CRDN marks and proprietary software;' the discontinuance of operations under the CRDN name; discontinuance of any CRDN-dedicated business telephone line; removal of decals; and return of all proprietary documentation." (Ex. 3 to Pl.'s Motion). Defense Counsel further advised that Defendants' position is that CRDN improperly terminated the Franchise Agreement.

In a letter dated November 15, 2006, Plaintiff's counsel addressed the non-compete obligations. (Ex. 4 to Pl.'s Motion). In response, Defendants' counsel stated that Dubasik "has no intention of competing against CRDN regarding any business contacts he made during his tenure at CRDN." (Ex. 5 to Pl.'s Br.). Plaintiff's counsel responded via letter on December 18, 2006, stating:

> [Y]ou state that Mr. Dubasik 'has no intention of competing against CRDN regarding any business contacts he made during his tenure at CRDN.' Mr. Dubasik's noncompete obligations are much broader than this. Pursuant to Section 13.D of the Franchise Agreement, Mr. Dubasik may not engage in any restoration dry cleaning business for a period of 24 months from the termination of the Franchise Agreement in the territory described therein; a copy of such Section is attached. Thus, Mr. Dubasik may not contact any restoration dry cleaning customers, whether they were customers before or during his tenure as a CRDN franchisee and my not perform restoration dry cleaning work in the specified territory.

(Ex. 6 to Pl.'s Br.).

In a letter dated January 2, 2007, Defense Counsel responded stating:

Your 12/18/06 epistle is in hand. Although Steve may now concede the substance of your Subpar. (B) on p. 1, he simply cannot agree to CRDN's exclusive

5

enjoyment of his own long-term, pre-franchise agreement business relationships under the guise of a covenant not to compete contained in his short-term franchise relationship with CRDN.

As such, we have filed the original of the enclosed Complaint today.

(Ex. 7 to Pl.'s Motion).

Tenke's complaint was filed in the Court of Common Pleas, in Trumbull County, Ohio. CRDN, however, removed that action to the United States District Court for the Northern District of Ohio on January 19, 2007 ("the Ohio Action"). Tenke's complaint in the Ohio Action seeks declaratory relief as to its obligations under the Franchisee Agreement and, additionally or alternatively, seeks reformation or rescission of the Franchise Agreement.

On February 2, 2007, CRDN filed a Motion to Dismiss the Ohio Action and on February 14, 2007, it filed a motion asking the Ohio Court for an expedited hearing. According to the docket in that matter, that motion is still pending and no hearing date has been set with respect to CRDN's pending motion.

C.  <u>Plaintiff's Motion for Preliminary Injunction</u>:

CRDN asks the Court to issue a Preliminary Injunction that would: 1) prohibit Defendants from operating a "restoration drycleaning business" during the next two years in a territory that comprises most of Ohio and an unspecified "geographic area encompassed by the Territories of any CRDN franchisees as of November 6, 2006"; 2) engaging in any contacts with "customers or former customers of the Franchised Business"; and 3) using the telephone number (330) 399-2235.

CRDN asserts that it meets the four part test for issuance of a preliminary injunction. First, it argues that the language at issue in the Franchise Agreement is clear and unambiguous

and it therefore has a substantial likelihood of success on the merits. Plaintiff's proposed order includes language stating that the "post-termination obligations are plainly and unambiguously set forth in the Franchise Agreement, and are **reasonable under the circumstances and therefore enforceable.**" (Pl.'s Ex. 13)(emphasis added). Plaintiff's motion and brief, however, do not squarely address a reasonableness determination or provide the authority or factual basis for same. Rather, Plaintiff addresses the issue in footnote on page 9, asserting that any contention that the obligations are unenforceable "would be facially without merit," relying on *Bristol Window & Door v. Hoogenstyn*, 250 Mich. App. 478 (2002); and *In re Spradlin*, 284 B.R. 830 (E.D. Mich. 2002).

CRDN further asserts that it will suffer irreparable harm, in the form of loss of customer goodwill, in the absence of an injunction. CRDN also assert that the requested injunction will not cause substantial harm to third parties and is in the public interest. It asserts that there is no harm to any third parties that will flow from the requested injunction.

CRDN acknowledges that in the Ohio Action, Plaintiff raises the issue of Tenke's post-termination non-competition obligations and that "if that action were appropriately filed, the first-filed rule would probably prohibit this Court from taking action with respect to that issue." (Pl.'s Br. at 14). It asserts, however, that for the reasons set forth in its Motion to Dismiss filed in the Ohio Action, the first-to-file[2] rule should not apply and the Ohio Action should be

---

[2]The "first-to-file rule" is a well-established doctrine that encourages comity among federal courts of equal rank. The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment. *Cobasys, L.L.C. v. FMP Resistance Welding Supply, Inc.*, 2006 WL 901681 (E.D. Mich. 2006). The most basic aspect of the first-to-file rule is that it is discretionary. *Id*.

dismissed.

D.        <u>Defendant's Response / Motion for Partial Summary Judgment</u>:

Rather than submit a response brief opposing Plaintiff's Motion for Preliminary Injunction, Defendants filed a Motion for Partial Summary Judgment and have indicated that their motion was also to serve as their response brief to Plaintiff's motion. In their motion, Defendants note that the Franchise Agreement contains two separate covenants not to compete, one during the term of the agreement and one effective after the termination of the agreement:

| Covenant Not to Compete During Term of Agreement | Covenant Not to Compete Effective After Termination of Agreement |
|---|---|
| To not "engage as an owner . . . agent, or in any other capacity **in any other business offering restoration dry cleaning services the same or similar to the services sold by the Franchised Business**." (Emphasis Added). | For a period of 24 months from the time of . . . termination of this Agreement, you promise not to engage as an owner . . . agent or in any other capacity **in any restoration drycleaning business,** within [the described geographical area.]." (Emphasis added). |

Defendants contend that "since Rite Cleaners has never been a 'restoration drycleaning business,'" the covenant not to compete following termination is "by definition, simply inapplicable to any and all Rite Cleaners' business activity after the agreement's termination." (Def.'s Br. at 2). Defendants further assert that if there is an ambiguity with respect to the provision, it must be construed in Defendants' favor under the rule of *contra proferentem* because Plaintiff drafted the agreement. Defendants therefore contend that Plaintiff's claim for breach of post-termination non-competition obligations should therefore be dismissed.

It appears that Defendants assert that a "restoration drycleaning business," as that term is used in the Franchise Agreement, is different than a full-service drycleaning business that offers

8

restoration drycleaning services among its various services. Defendants appear to argue that a dry cleaning business that holds itself out as specializing in restoration dry cleaning, or does exclusively restoration work, is different than a full service dry cleaning business that does not hold itself out as specializing in restoration services, but does offer such services as part of its various services. Defendants contend that difference is reflected in the varying language used in the above Franchise Agreement provisions (*i.e.*, this differing language was used because there is a difference between a regular drycleaning business that "offers restoration dry cleaning services" as part of its many services, and a dry cleaning business that holds itself out as "restoration drycleaning business.")

## ANALYSIS

In considering injunctive relief, the district court must take into account: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Connection Distributing Company v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). No single factor is dispositive. The court must balance the factors to determine whether they weigh in favor of an injunction. *Id*. The primary purpose of a preliminary injunction is to maintain the status quo. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

The proof required to obtain a preliminary injunction is "much more stringent than the proof required to survive a summary judgment motion." *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000). "[P]reliminary injunction is an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which clearly

9

demand it." *Id*. (citation omitted).

As explained below, the Court concludes that the extraordinary relief of a preliminary injunction is not warranted in this case because Plaintiff has not established that it has a substantial likelihood of success on the merits given that: 1) at this early juncture in the case, the Court cannot determine if the non-compete provisions at issue are reasonable under the specific factual circumstances presented here and are therefore enforceable; and 2) upon initial review, the challenged provisions appear capable of two conflicting interpretations and a ruling prior to discovery would be premature. In addition, in order to promote comity and avoid inconsistent rulings, the Court does not believe that an injunction should be issued in this case before the Ohio Court rules on Plaintiff's pending Motion to Dismiss in any event.

A.   Reasonableness Determination:

Under Michigan law, a common-law rule of reasonableness is applied to determine whether or not a noncompetition agreement is enforceable. *Bristol Window and Door, Inc., supra*; *St. Clair Medical, P.C. v. Borgiel*, 270 Mich. App. 260 (2006). Under this common-law rule of reason, a "restrictive covenant must protect an employer's reasonable competitive business interests, but its protection in terms of duration, geographical scope, and the type of employment or line of business must be reasonable. Additionally, a restrictive covenant must be reasonable as between the parties, and it must not be specially injurious to the public." *St. Clair Medical, P.C.*, 270 Mich.App. at 266. "Because the prohibition on all competition is in restraint of trade, an employer's business interest justifying a restrictive covenant must be greater than merely preventing competition." *Id*. To be reasonable in relation to a party's competitive business interest, a restrictive covenant must protect against the opposing party's gaining some

"unfair advantage" in competition. Michigan courts have expressed that such assessments of reasonableness in light of a party's legitimate business interests are "inherently fact specific." *Capaldi v. Liftaid Transport, L.L.C.,* 2006 WL 3019799 (Mich. App. 2006).

In submitting its proposed preliminary injunction, under which the Court would rule that "The post-termination obligations are plainly and unambiguously set forth in the Franchise Agreement, **and are reasonable under the circumstances and therefore enforceable,**" CRDN appears to recognize that the non-compete provisions must be deemed reasonable in order to be enforceable. CRDN, however, does not squarely address the issue and rather simply references the issue in a footnote, relying on *Bristol Window and Door, Inc*. and *In Re Spradlin*. Neither case that CRDN relies on supports a determination that the provision here must be deemed reasonable, and therefore enforceable, upon the record before the Court.

In *Bristol Window and Door, Inc.*, the trial court failed to apply the common-law rule of reason to a non-compete agreement between a company and its independent contractor because the court concluded that such a reasonableness determination only applied to non-compete agreements between employers and employees. The Michigan Court of Appeals disagreed and ruled that "[o]ur review of the history of restraint of trade law in Michigan makes clear, the common law in Michigan contemplated the enforceability of noncompetition agreements that qualified as reasonable." *Id*. at 19. The appellate court therefore concluded that the trial court failed to apply the common-law rule of reason when ruling with respect to the enforceability of the noncompetition agreements at issue and remanded the case for further proceedings consistent with its opinion.

*In Re Spradlin* was bankruptcy case with a long procedural history. In that case, the

bankruptcy court ultimately held that a non-compete agreement was unenforceable and defendants appealed to the district court. The district court reversed, concluding that the bankruptcy court had erred in its decision regarding the enforceability of the agreement by not applying the common law rule of reasonableness. Because the record before the appellate court included sufficient evidence upon which the appellate court could make such a determination, the appellate court applied the rule of reasonableness to the specific facts of that case and concluded that the agreement was reasonable and therefore enforceable.

As in both of the above cases, the Court must ultimately apply the rule of reasonableness in order to determine if the non-compete provisions are enforceable. Unlike those cases, a sufficient factual record has not been presented to the Court that would allow the Court to make such a fact specific determination at this early stage of the case.[3]

For example, geographic limitations in non-competition agreements must be tailored so that the scope of the agreement is no greater than is reasonably necessary to protect the employer's legitimate business interests. *Capaldi, supra.* The geographic limitations at issue here would not only prohibit Defendants from operating a "restoration dry cleaning business" in virtually all of Ohio and parts of Pennsylvania, they would also prohibit Defendants from operating a "restoration drycleaning business" during the next two years in a territory that comprises an unspecified "geographic area encompassed by the Territories of any CRDN franchisees" that existed as of the date the Franchise Agreement was terminated. CRDN has not

---

[3] The Court notes that CRDN sought leave to have two witnesses, Robert Ufer and Louis Bifano testify in support of their motion. CRDN asserted that those two witnesses would testify as to the same matters that are already set forth in their respective affidavits. The proposed duplicative testimony would not aid the Court with respect to a reasonableness determination.

even informed the Court of the various geographic areas that would cover.

Thus, based on the record before the Court, the Court cannot make a reasonableness determination as to the noncompete provisions at issue. Therefore, CRDN has failed to establish a strong likelihood of success on the merits that would warrant the extraordinary relief of a preliminary injunction.

B. Contract Interpretation:

The Court also finds that CRDN lacks the requisite strong likelihood of success on the merits because the challenged provisions appear capable of two conflicting interpretations and a ruling prior to discovery would be premature

A contract is ambiguous when its provisions are capable of conflicting interpretations. *Klapp v. United Ins. Group Agency, Inc.*, 468 Mich. 459, 467 (2003). Here, upon initial review, the challenged provisions appear capable of two conflicting interpretations.

"It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury." *Klapp,* 468 Mich. at 469. "Where a contract is to be construed by its terms alone, it is the duty of the court to interpret it; but where its meaning is obscure and its construction depends upon other and extrinsic facts in connection with what is written, the question of interpretation should be submitted to the jury, under proper instructions." *Id*.

Thus, where a written contract is ambiguous, a factual question is presented as to the meaning of its provisions, requiring a factual determination as to the parties in entering the contract. *Id*. In such circumstances, the fact finder must interpret the contract's terms, in light of the apparent purpose of the contract as a whole, the rules of contract construction, and extrinsic evidence of intent and meaning. *Id.* "In resolving such a question of fact, i.e., the interpretation

of a contract whose language is ambiguous, the jury is to consider relevant extrinsic evidence," such as extrinsic evidence as to the parties' conduct, the statements of it representatives, and past practices. *Id*. at 469-70.

Defendants assert that if the Court finds the language at issue to be ambiguous, it must construe the language in favor of Defendants because CRDN drafted the language. Defendants rely on the equivalent of Michigan's rule of *contra proferentem*.

In *Klapp*, the Michigan Supreme Court held that the meaning of an ambiguous contract is a question of fact that must be decided by the jury. The Court further explained that "[i]n interpreting a contract whose language is ambiguous, **the jury** should also consider that ambiguities are to be construed against the drafter of the contract." *Klapp,* 468 Mich. at 470 (emphasis added). The Court further explained that the "rule of contra proferentem should be viewed essentially as a 'tie-breaker,' to be utilized only after all conventional means of contract interpretation, including the consideration of relevant extrinsic evidence, have been applied and found wanting." *Id*. at 472.

Accordingly, Defendants' argument that the Court should resolve the ambiguity in favor of the nondrafter in connection with its Motion for Partial Summary Judgment must be rejected. At this early juncture, the challenged provisions appear capable of two conflicting interpretations and a ruling in favor of either party prior to discovery would be premature.

C.  Comity Considerations:

Finally, the Court also concludes that comity considerations weigh in favor of not granting the preliminary injunction while CRDN's Motion to Dismiss in the Ohio Action is still pending. The determination on CRDN's Motion to Dismiss the Ohio Action is for the Ohio

court to make, not this Court. Unless and until that action is dismissed, the same issues are raised in both cases and inconsistent rulings could be made if this Court were to grant a preliminary injunction in favor of CRDN while the Ohio Action, which was the first of the two actions to be filed, is still pending.

## CONCLUSION & ORDER

For the reasons set forth above, **IT IS ORDERED,** pursuant to Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan, that the pending motions shall be decided upon the briefs. Accordingly, the hearing previously scheduled for May 17, 2007 is **ADJOURNED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction [Docket Entry No. 8] and Plaintiff's Motion for Leave to Call Witnesses [Docket Entry No. 59] are hereby **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion for Partial Summary Judgment [Docket Entry Nos. 23 & 55] is **DENIED**.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: May 8, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 8, 2007, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager