UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Certified Restoration Dry Cleaning
Network, L.L.C.,

    Plaintiff,

v.                                                    Case No. 07-10341

Tenke Corp. d/b/a Rite Cleaners,          Honorable Sean F. Cox
and Stephen Dubasik,

    Defendants.
_____/

## **OPINION**

This matter is currently before the Court on cross-motions seeking partial summary judgment. The Court finds that oral argument would not significantly aid the decisional process with respect to these motions and the Court shall therefore decide the motions based upon the written briefs. Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan. For the reasons that follow, Defendants' Motion for Partial Summary Judgment, seeking summary judgment with respect to their Fourth Counter-Claim, shall be DENIED. Plaintiff's Motion for Partial Summary Judgment, seeking summary judgment on Defendants' Counter-Claims, shall be GRANTED. In addition, although the Court concludes that Plaintiff has established that it is entitled to a permanent injunction, the Court shall order supplemental briefing before making a final ruling with respect to the terms of the permanent injunction that shall be issued.

BACKGROUND

A.    <u>Plaintiff's Claims And Defendants' Counter-Claims:</u>

In its Second Amended Verified Complaint in this action, Plaintiff asserts the following

claims: "Breach of Post-Termination Non-Competition Obligations" (Count I); "Breach of Post-Termination Obligations Not to Contact or Provide Services to CRDN Customers" (Count II); "Violation of Obligation to Discontinue Use of Telephone Number and Listings" (Count III); "Trademark Violations" (Count IV); "Tortious Interference with Contract, with Business Relationships and Expectancy, and with Prospective Economic Advantage" (Count V); and "Breach of Payment Obligations" (Count VI). (Docket Entry No. 53).

Defendants asserted the following counter-claims against Plaintiff: "Declaratory Judgment – 'Territory' Contract Provision" (First Counterclaim); "Declaratory Judgment - 'Covenant Not to Compete' Contract Provision" (Second Counterclaim); "Reformation" (Third Counterclaim); "Rescission" (Fourth Counterclaim); and "Business Opportunity Plan / Franchise Regulation" (Fifth Counterclaim). (Docket Entry No. 21).

The following claims were dismissed from this action, with prejudice, via a stipulated order of dismissal entered on January 24, 2008: Counts III ("Violation of Obligation to Discontinue Use of Telephone Number and Listings") and V ("Tortious Interference with Contract, with Business Relationships and Expectancy, and with Prospective Economic Advantage") of Plaintiff's Second Amend Verified Complaint; and Defendants' Fifth Counter-Claim ("Business Opportunity Plan / Franchise Regulation"). (Docket Entry No. 80). In addition, during briefing on the parties' cross-motions seeking partial summary judgment, Defendants indicated they wish to dismiss their First Counter-Claim. (*See* Docket Entry No. 90 at 1).

B.  Procedural History:

After filing this action, Plaintiff promptly filed a Motion for Preliminary Injunction,

which this Court denied.

Thereafter, Plaintiff filed an interlocutory appeal and the United States Court of Appeals for the Sixth Circuit reversed this Court's order denying Plaintiff's Motion for Preliminary Injunction and remanded the case with instructions to issue Plaintiff's requested preliminary injunction. *See CRDN v. Tenke*, 511 F.3d 535 (6th Cir. 2007).[1]

Because the background facts, including the various provisions of the parties' written Franchise Agreement, are fully detailed in *CRDN v. Tenke, supra*, the Court will not restate them here.

C.   Standard Of Decision:

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56 (c). The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admission on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

---

[1] This Court issued a Preliminary Injunction in this action on January 3, 2008.

ANALYSIS

This matter is currently before the Court on cross-motions seeking partial summary judgment. On February 25, 2008, Defendants filed their Motion For Partial Summary Judgment. (Docket Entry No. 82). In that motion, Defendants ask the Court to grant partial summary judgment in their favor on Defendants' Fourth Counter-Claim and rule that Defendants' are entitled to rescission of the Franchise Agreement. On January 29, 2008, Plaintiff filed its own Motion for Partial Summary Judgment, wherein Plaintiff seeks summary judgment on its claim for an injunction in Count I of its complaint, and also seeks summary judgment in its favor with respect to each counter-claim asserted by Defendants.

I. <u>Defendants' Counter-Claims:</u>

    A. <u>Defendants' Second Counter-Claim, Seeking A Declaration That Tenke's Prior Business Relationships Are Not Within The Ambit Of the Franchise Agreement's Covenant Not To Compete:</u>

In their Second Counter-Claim, Defendants seek a declaration that the Franchise Agreement's covenant not to compete does not include Defendants' prior business relationships. (*See* Defs.' Br. in Resp. to Plaintiff's Motion for Partial Summ. J. at 2)("yes, Tenke's Second Counterclaim seeks a declaration that its pre-existing restoration drycleaning customers are outside the ambit of ¶ 13(D).") Defendants contend that the scope of ¶ 13(D) does not extend to its pre-existing restoration customers because "[n]o provision was made, and no consideration was paid or otherwise provided for Plaintiff's acquisition of those relationships in or consequent to the parties' Franchise Agreement." (Defs.' Second Counter-Claim at ¶ 3).

Plaintiff contends that it is entitled to summary judgment with respect to this claim because the claim fails as a matter of law. Plaintiff contends that the language of ¶ 13(D) is

4

unambiguous and simply does not provide for a "carve out" that would exclude any of Defendants' prior restoration customers from the scope of the covenant not to compete.[2]

In response, Defendants ignore the express terms of the contract and simply rely on *Perceptron, Inc. v. Sensor Adaptive Machines, Inc.*, 221 F.3d 913 (6th Cir. 2000) and *In re Spradlin*, 274 B.R. 701 (Bankr. E.D. Mich. 2002) to support their position that they are entitled to the carve-out they seek. Defendants argue that here, "CRDN paid Tenke nothing to purchase the customer goodwill of Lewis Construction, Inc., National Fire Repair or any other pre-franchise customer of Tenke." (Defs.' Br. at 5).

The Court concludes that Plaintiff is entitled to summary judgment with respect to this claim.

The Sixth Circuit had already ruled that "[i]n the instant case, the meaning of the non-compete clause in section 13.D of the franchise agreement is not ambiguous. The non-compete clause prevents Defendants from 'engag[ing] as owner, shareholder, partner, director, officer, employee, consultant, salesperson, representative, or agent or in any other capacity in any restoration drycleaning business' within a specified geographic area for a two-year period." CRDN v. *Tenke, supra*. The court further ruled that "[t]he plain import of this contract language is to prohibit Defendants from performing any restoration dry cleaning services within the specified geographic area for the two years following the contract's termination." *Id.* Defendants' Second Counter-Claim must be dismissed because the unambiguous contract language simply does not provide an exception for any of Defendants' pre-existing restoration

---

[2]Plaintiff also argues that there is no evidence of prior business relationships in any event, even thought it contends the Court should reach the issue because the contract language is clear.

5

customers.

Moreover, as Plaintiff notes in its Reply, the factors to be considered in determining the reasonableness of a franchisee post-termination covenant not to compete are fully detailed in *CRDN v. Tenke*, 511 F.3d at 545-50. Plaintiff correctly notes that Defendants do not dispute the reasonableness of the covenant not to compete based on any of those factors. Rather, Defendants rely exclusively on asset transfer cases – not cases involving covenants not to compete in franchise agreements.[3]

The Court shall therefore grant summary judgment in Plaintiff's favor with respect to Defendants' Second Counter-Claim.

> B. <u>Defendants' Third Counter-Claim, Seeking Reformation Of The Franchise Agreement:</u>

Defendants' Third Counter-Claim, which seeks reformation of the Franchise Agreement, alleges the following:

> 1. Defendant-Counterclaimant realleges and, by reference, herein incorporates the allegations heretofore contained in ¶¶ 1 thru 3 of its First Counterclaim.
>
> 2. Arguendo ¶ 1 C of the agreement does not accurately reflect the parties' intent on the meaning of their agreement's 'territorial' provision, such inaccuracy resulted from mistake.
>
> 3. As a result of further mistake, the following provision was omitted from ¶ 2(C) of the final draft of the Franchise Agreement:
>
> > ' . . . Provided, however, notwithstanding any other provision in this Agreement to the contrary, it is agreed and understood that each calendar year no Royalty shall be due or payable on the first $40,000 of Gross Sales

---

[3] In addition, the *In Re Spradlin* opinion that Defendants rely on is not binding on this Court and was reversed in a subsequent opinion. *See In Re Spradlin*, 284 B.R. 830 (October 3, 2002).

> . . .'
>
> 4. Defendant-Counterclaimant has no adequate remedy at law.

(Defs.' Third Counter-Claim at ¶ 1-4). Thus, Defendants alleged that the Franchise Agreement should be reformed with respect to two issues: 1) the territory issue, involving the interpretation of ¶ 1(C); and 2) the royalty credit issue. During briefing of the pending motions, however, Defendants indicated that they wished to withdraw and dismiss the portion of this claim involving the territory issue. (*See* Defs.' Br. at 6).

Plaintiff contends that Defendants' Third Counter-Claim must be dismissed as untimely under Section 15 (K) of the Franchise Agreement, which provides that any claim must be filed within a year from the date it is discovered or should be discovered. Plaintiff asserts that no later than June, 2004, Defendants were aware that the contract did not contain a provision providing for a royalty credit. (Pl.'s Ex. 10; Pl.'s Ex. 6 at ¶¶ 30-36; Dubasik Dep. at 61-62 & 97-99). Relying on *Rory v. Continental Ins. Co.*, 473 Mich. 457, 467-70 (2005), Plaintiff contends that because Defendant failed to seek reformation of the Franchise Agreement within one year of Defendants' knowledge that the Franchise Agreement did not contain a royalty credit provision, the Third Counter-Claim is barred by the unambiguous provision in the contract.

In response, Defendants claim that Dubasik did not become aware of the facts giving rise to the fact that the royalty credit provision was not included in the Franchise Agreement that he signed until October 20, 2006. (*See* Defs.' Response Br. at 6, relying on Dubasik's Affidavit at ¶ 7).

The Court concludes that it must grant summary judgment in favor of Plaintiff with respect to this counterclaim because the evidence establishes that Defendants were actually

aware, no later than 2004, that the executed version of the Franchise Agreement did not contain a royalty credit provision, yet Defendants did not assert a claim for reformation within one year of that knowledge and the claim is therefore time-barred under the unambiguous language of the contract.

As Plaintiff's note, Section 15(K) of the Franchise Agreement, clearly bars claims that are not brought within a year of the time that they are discovered or should be discovered:

> K.  LIMITATION OF CLAIMS.
> Except for claims arising from your non-payment or underpayment of amounts you owe us under this Agreement, any and all claims arising out of or relating to this Agreement or our relationship with you will be barred unless mediation or a judicial proceedings is commenced within one year from the date on which the party asserting the claim knew or should have known of the facts giving rise to the claim.

(Franchise Agreement at ¶ 15(K)).

The evidence establishes that, no later than 2004, Defendants knew that the executed version of the Franchise Agreement did not contain a royalty credit provision. This evidence includes a letter dated June 18, 2004, that was sent to Dubasik, at Rite Cleaners, by Plaintiff's Vice President of Operations Louis "Chip" Bifano. (Ex. 10 to Pl.'s Br.). That letter stated, in pertinent part, "I am writing in response to your question regarding the Royalty Credit. When reviewing the Executed Franchise Agreement, we see that there is no mention of a royalty credit." (*Id*.). In addition, Dubasik himself admitted during his deposition that in 2004 he was aware of the omission of the royalty credit provision from the executed Franchise Agreement:

> Q.  When did you first realize that the $40,000 credit provision was not in the version that you signed?
> A.  If I'm not – if I'm correct, it would probably be the first year that I had to pay royalty fees and that it was not adjusted off the royalty fees.
> . . . .

> Q. In your earlier testimony I believe you indicated that you weren't sure who you discussed your concerns with about the fact that the 40,000 provision was not in your agreement. I think you indicated maybe Travis, maybe Wayne, maybe somebody else, maybe Chip. Can you be any more specific about what you recall about your discussions about this once you discovered that the $40,000 provision was not in the agreement?
> A. I was not happy that it was not in my agreement. I didn't understand why it was not in my agreement.
> . . . .
> Q. Do you remember a meeting where you talked about the 40,000 royalty credit issue?
> A. I remember I brought it up to him. I don't remember which meeting or when it was.
> Q. Do you remember what you said to each other about it?
> A. No, I honestly don't remember that, no.
> Q. Do you remember discussing this with Chip?
> A. Yes, when we got to this point, 2004, I discussed it with Chip, yes.

(Dubasik Dep. at 61-62 & 97-99). Dubasik's testimony that in 2004 he discussed the absence of a royalty provision in the executed contract with Chip is entirely consistent with Chip's affidavit. (*See* Ex. 10 to Pl.'s Br. at ¶ 34).

Thus, the evidence[4] before this Court establishes that Defendants were aware, in 2004, that the executed Franchise Agreement did not contain a royalty provision. Nevertheless, as Defendants acknowledge in their brief, Defendants did not file suit seeking reformation until January, 2007. (Defs.' Br. at 7). Accordingly, Defendants' Third Counter-Claim must be

---

[4]The Court notes that, in an attempt to avoid summary judgment on this issue, Defendants submitted an affidavit from Dubasik that contradicts his deposition testimony on this issue. The Court will not consider that affidavit, however, because it is well established that a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony. *Reid v. Sears,* 790 F.2d 453, 460 (6th Cir. 1986); *Penney v. United Parcel Service*, 128 F.3d 408, 415 (6th Cir. 1997).

dismissed because it is time-barred under the unambiguous terms of the contract.[5]

    C.    <u>Defendants' Fourth Counter-Claim, Seeking Rescission Of The Franchise Agreement:</u>

Defendants' Fourth Counter-Claim, the only counter-claim upon which Defendants seek summary judgment, alleges, in its entirety, as follows:

1. Defendant-Counterclaimant realleges and, by reference, herein incorporates the allegations heretofore contained in ¶ 1[6] of its First Counterclaim and ¶ 6[7] of its Second Counterclaim.

2. Under the facts and circumstances presented, Plaintiff's termination of the Franchise Agreement constituted a material breach of that agreement.

3. At all times relevant, Defendant-Counterclaimant substantially performed the terms and conditions of the parties' agreement, including payment to the Plaintiff of the sum of $98,294.78 to date.

4. Defendant-Counterclaimant has no adequate remedy at law.

(Docket Entry 21 at 5). Thus, Defendants' Fourth Counter-Claim alleges that Defendants were in compliance with the Franchise Agreement, and that Plaintiff's termination of that agreement comprised a material breach, thereby entitling Defendants to rescission of the agreement.

In its motion seeking summary judgment as to this claim, Plaintiff contends that, contrary

---

[5]Plaintiff's brief also contains alternative grounds for summary judgment as to this claim. If the Court dismisses the claim because it is time-barred, however, the Court need not analyze the additional grounds.

[6]Paragraph 1 of Defendants' First-Counter Claim states that "At all times relevant, Defendant-Counterclaimant was Plaintiff's franchisee under a certain 6/6/02 Franchise Agreement prepared by the Plaintiff, a copy of which is not attached because Plaintiff is in receipt of same." (*Id*. at 3).

[7]Paragraph 6 of Defendants' Second Counter-Claim states that "[t]he parties disagree on whether Defendant-Counterclaimant's prior business relationships are within the ambit of the agreement's covenant not to compete." (*Id.* at 4).

to the allegations in Defendants' Fourth Counter-Claim, the evidence clearly establishes that Tenke was in violation of numerous provisions of the Franchise Agreement. It contends that, as detailed in Bifano's affidavit, after Tenke was in repeated violation of its royalty payment, electronic transfer fund payment, and sales data entry requirements, Plaintiff ultimately provided timely notice and terminated the Franchise Agreement. Plaintiff asserts that Defendants cannot produce evidence to establish that they were in compliance with those obligations and, therefore, as a matter of law, the termination by Plaintiff does not constitute a material breach of the contract. *Two Men and a Truck v. Two Men and Truck*, 949 F.Supp. 500, 505 (1996).

Notably, in response to Plaintiff's properly supported motion, and in their cross-motion seeking partial summary judgment on this counter-claim, Defendants do not dispute that they were not in compliance with their various obligations under the Franchise Agreement and do not dispute that Plaintiff was therefore entitled to terminate the contract. Thus, there is no dispute that Plaintiff is entitled to summary judgment with respect to Defendants' Fourth Counter-Claim, as pled.

Defendants, however, now seek to assert an entirely different claim than that pled in their Fourth Counter-Claim. Defendants now allege that after the parties executed the Franchise Agreement, the parties "orally modified" the contract to include an agreement relating to marketing and territory issues. Defendants' claim that Plaintiff breached the oral agreement and, as a result, the Court should rescind the written Franchise Agreement.

Even if this claim had been pled, the claim fails for numerous reasons, as detailed in

Plaintiff's briefs.[8]  Most significantly, during his deposition in this action, Dubasik himself testified that the oral agreement concerning marketing and territory issues was an oral agreement between Defendants and two of their neighboring franchisees, Jeff Caro and Jack Schwartz.  For example, Dubasik testified as follows:

> Q. If a contractor happened to be located in Pittsburgh but for some reason happened to have a job in Warren, you believed that you could do that work?
> A. Yes.
> Q. Did Wayne tell you that?
> A. We really didn't discuss it, we didn't discuss it one way or the other.
> Q. Okay.  Did you do work in that fashion?  In other words, did you accept work in your territory that was given to you by contractors or insurance companies located outside of your territory?
> A. Want to rephrase that one more time?
> Q. Did it actually happen the kind of situation that we just talked about where somebody was located outside, the contractor was located outside the territory but had work in the territory that you did?
> A. Actually we entered into an agreement, a verbal agreement three of us in my territory me, Jeff Caro and Jack Schwartz, that we would to work in our territories and market together anywhere.
> Q. But – okay.
> A. Yes.
> Q. That's a yes because you agreed with your neighboring franchisees you could do that?
> A. Yes.  They actually marketed together.
> . . . .
> A. That is the verbal agreement, yes.
> Q. That is the verbal agreement?
> A. Yes.
> Q. Between you and other franchisees?
> A. Jack Schwartz and Jeff Caro.
> Q. Did that involve CRDN at all?
> A. Wayne was at the meeting.
> Q. He was at the meeting?

---

[8]Those additional reasons include, for example, that the Franchise Agreement expressly provides that the agreement "may not be modified, except by a written agreement" (Franchise Agreement at ¶ 15(J) and that Defendants cannot established that Plaintiff waived that provision.

A. Yes.

(Dubasik Dep. at 69-71). Thus, Dubasik testified that the oral agreement relating to marketing and territory issues was with two other franchisees - not with Plaintiff. Because Plaintiff was not a party to the alleged oral agreement, that oral agreement cannot possibly support Defendants' counter-claim seeking rescission of the Franchise Agreement.[9]

Accordingly, Plaintiff is entitled to summary judgment with respect to Plaintiff's Fourth Counter-Claim.

## II. Plaintiff's Request For Summary Judgment On Its Claim For An Injunction In Count I Of Its Complaint:

A preliminary injunction was issued by this Court on January 3, 2008. In its Motion for Partial Summary Judgment, Plaintiff now seeks a permanent injunction.

"The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiffs must show actual, as opposed to a likelihood of, success on the merits." *A.C.L.U. v. Rutherford County*, 2006 WL 2645198 (6th Cir. 2006)(citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)). Thus, the Court must consider four factors when determining to grant or deny Plaintiff's request for a permanent

---

[9]The Court notes that in an attempt to avoid summary judgment on this issue, Dubasik submitted an affidavit stating that Plaintiff was a party to the verbal agreement and that the verbal agreement involved Defendants agreeing to allow another franchisee's plant to be located within Defendants' territory. (Dubasik Affidavit at ¶ 4). That affidavit directly contradicts Dubasik's deposition testimony wherein he testified that: 1) the verbal agreement was between Defendants and two other franchisees; and 2) Defendants' agreement to having another franchisee's plant located within its territory was an entirely separate issue. (Dubasik Dep. at 69-71 & 74-75). Thus, the Court will not consider that affidavit because it is well established that a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony. *Reid, supra; Penney, supra.*

injunction: 1) the Plaintiff's success on the merits; 2) whether Plaintiff may suffer irreparable harm absent the injunction; 3) whether granting the injunction will cause substantial harm to others; 4) the impact of an injunction upon the public interest. *Id*.

In their Response Brief, Defendants acknowledge that, to a large extent, *CRDN v. Tenke*, 511 F.3d 535 (6th Cir. 2007) controls with respect to Plaintiff's request for a permanent injunction.

A.  Success On The Merits:

In its motion, Plaintiff notes that the law governing the enforceability of the subject covenant was discussed in detail by the Sixth Circuit in *CRDN v. Tenke, supra*. Plaintiff states that under Michigan law a covenant not to compete is enforceable to the extent its duration, geographic scope, and type of activity prohibited are reasonably necessary to protect the covenantee's legitimate business interests. (Pl.'s Br. at 7; *see also CRDN v. Tenke, supra*.) ("In evaluating a non-competition clause for reasonableness, Michigan courts generally examine the clause's duration, geographic scope, and the type of employment prohibited.").

Plaintiff's motion then details the evidence which it contends establishes that the covenant not to compete at issue in this case, ¶ 13(D) of the franchise agreement, has a reasonable durational scope, a reasonable scope of activity that it prohibits, and a reasonable geographic scope. (*See* Pl.'s Br. at 8-12).

Defendants' only response to that evidence supporting Plaintiff's request for a permanent injunction is to state that "[s]ubject only to the efficacy of the Second Counter-Claim, ¶ 13(D)'s scope is reasonable in duration and in prohibited activity," and "subject to the Second Counterclaim, ¶ 13(D)'s geographic scope is also reasonable." (Defs.' Response Br. at 2). As

14

stated *supra,* however, the Court is granting Plaintiff's Motion for Partial Summary Judgment with respect to Defendants' Second Counter-Claim and dismissing that claim with prejudice.

In response to Plaintiff's properly supported motion seeking summary judgment with respect to its request for a permanent injunction, Defendant has failed to submit any admissible evidence to establish that the covenant not to compete at issue in this case is unreasonable with respect to its duration, its scope of prohibited activity, or its geographic scope. Thus, there can be no dispute that Plaintiff has shown actual success on the merits of its claim.

B.   Remaining Factors:

Plaintiff asserts that although it must show the remaining three factors (irreparable harm, balance of harm and public interest) weigh in favor of an injunction, because those factors are identical for purposes of preliminary and permanent injunction applications, appellate court findings on them at the preliminary injunction stage are binding on the district court at the permanent injunction stage. (Pl.'s Br. at 12)(citing *Prairie Band v. Wagnon*, 402 F.3d 1015, 1019 (10tth Cir. 2005). Plaintiff further states:

> With respect to irreparable harm, the Sixth Circuit held that the likely interference with customer relationships flowing from a breach of the non-compete agreement is the kind of injury for which monetary damages are difficult to calculate and which therefore comprises irreparable harm, and that '[s]uch injuries are precisely what [CRDN] will suffer is Defendants are allowed to continue to breach the franchise agreement's non-compete clause. 511 F.3d at 550. There is no evidence which Tenke and Dubasik could submit which would support any conclusion other than that reached by the Sixth Circuit, which in any event is binding under the law of the case doctrine. The same is true for the 'substantial harm to others' and 'public interest' factors addressed at 511 F.3d at 550-551.

(Pl.'s Br. at 13).

In response, Defendants acknowledge that, under the law of the case doctrine, Plaintiff is

15

entitled to summary judgment with respect to the remaining three injunction factors. (*See* Defs.' Resp. Br. at 2).

Accordingly, Plaintiff is entitled to a permanent injunction. The only issue that remains for the Court's determination is whether the Court should extend the term of the of the covenant not to compete beyond its stated expiration date as a remedy for breach of the agreement by Defendants.

C.   Should The Court Extend The Term Of The Injunction Beyond The Two-Year Period Provided For In The Contract?

The covenant not to compete contained in the Franchise Agreement at ¶ 13(D) provides that "[f]or a period of 24 months from the time of expiration or termination of" the agreement, Defendants promise not to engage in any restoration drycleaning business within a defined geographic territory. (Franchise Agreement at ¶ 13(D)).

In its motion, Plaintiff asserts that because Dubasik has admitted that Tenke has continued to perform restoration services regularly for certain customers in its former territory, and for any other customers in its former territory who request restoration services (Dubasik Dep. at 47-50 & 93-96), this is a case where the covenantor has refused to abide by the covenant not to compete during the covenant's stated duration and it is therefore appropriate for this Court to extend the term of the injunction such that it expires two years from the date of the preliminary injunction in this matter. Plaintiff relies on *Thermatool v. Borzym*, 227 Mich.App. 366, 375 (1998) and *Superior Consultant v. Bailey*, 2000 WL 1279161 (E.D. Mich. 2000).

In response, Defendants contend that the Court should not extend the term of the injunction because this case can be factually distinguished from *Thermatool* and *Superior*

*Consulant*: "There, the circumstances for extending the covenant's term were that (1) the covenator 'had flouted the terms of' the non-competition agreement; (2) money damages were not easily calculable; and (3) the breach consisted of 'continuance and systemic activity in violation of the agreement.'" (Defs.' Resp. Br. at 3). Defendants assert that "[h]ere, however[,] Tenke never marketed its restoration drycleaning business after [Plaintiff] terminated its franchise on 11/6/06, not even during the period between this Court's denying preliminary injunctive relief to [Plaintiff] and the Sixth Circuit Court of Appeals' reversal and remand. And, with rare exception, Tenke only did post-termination restoration drycleaning for Lewis Construction, Inc. and National Fire Repair, customers for whom it had performed that service many years before becoming a CRDN franchisee." (*Id.*).

In *Thermatool*, the Michigan Court of Appeals addressed the following issue of first impression under Michigan law: "whether a trial court may extend the terms of a noncompetition agreement as a remedy for a breach of the agreement." *Thermatool,* 227 Mich.App. at 373. The *Thermatool* court answered that question in the affirmative:

> After careful consideration we are persuaded that the better view is that, in appropriate circumstances, the term of a noncompetition agreement may be extended beyond its stated expiration date. Specific performance of an agreement may be an appropriate remedy where enforcement of the promise is necessary to avoid injustice. *See Giordano v. Markovitz*, 209 Mich.App. 676, 680, 531 N.W.2d 815 (1995). In cases where a party had flouted the terms of a noncompetition agreement, the court should be able to fashion appropriate equitable relief despite the fact that the parties did not expressly provide for such relief in their agreement. Furthermore, as courts allowing extensions of the terms of noncompetition agreements have found, it may not be possible to determine monetary damages with any degree of certainty. Where this is the case, the breaching party should not be rewarded because the agreement has already expired. Although M.C.L. §445.774a(1); M.S.A. §28.70(4a)(1) does not address the proper relief in the event of a breach of a covenant not to compete, it does allow a court to modify an unreasonable agreement and to specifically enforce the

17

agreement as modified. We therefore infer that it is permissible for a court to specifically enforce a reasonable agreement.

*Thermatool, supra*, at 375. The court further stated that "[i]n cases where courts have extended a covenant not to compete as a remedy for a breach, the breach has consisted of continuous and systematic activity in violation of the agreement." *Id*. at 377-78.

Thus, as this Court reads *Thermatool,* a trial court may extend a covenant not to compete beyond its stated expiration date as an appropriate remedy for a breach of the agreement only in cases where: 1) the breaching party flouted the terms of the covenant not to compete; 2) the breach consisted of continuous and systematic activity, as opposed to an isolated transaction; and 3) it is not possible to determine monetary damages with any degree of certainty.

As the briefing on this issue stands today, the Court does not believe that is has sufficient information to determine if the covenant not to compete should be extended under *Thermatool.* The Court shall therefore order supplemental briefing by the parties. Within 14 days of this Opinion & Order, Plaintiff shall file a supplemental brief of no more than 10 pages that addresses the following questions and issues:

1) Does Plaintiff contend that Defendants "flouted" the terms of the covenant not to compete? If so, describe how they flouted the covenant and identify all record evidence of same.

2) Does Plaintiff contend that Defendants engaged in continuous and systematic activity that breached the covenant not to compete? If so, describe that activity and identify all record evidence of same.

3) Does Plaintiff contend that it is not possible to determine, within a reasonable degree of certainty, monetary damages for Defendants' breach of the covenant not to compete?

4) If the answer to Question No. 3 is Yes, is Plaintiff seeking an extension of the term of the covenant not to compete in lieu of monetary damages for

>> Defendants' breach of the covenant not to compete?

> 5) If the answer to Question No. 3 is No, and Plaintiff intends to seek both monetary damages and an extension of the term of the covenant not to compete, is there any legal authority for such a recovery?

Plaintiff's supplemental brief should also attach, as exhibits, one or more proposed orders issuing the requested permanent injunction.

Within 14 days of the filing of Plaintiff's supplemental brief, Defendants may file a supplemental response brief of no more than 10 pages. Defendants may also attach, as exhibits, one or more alternative proposed orders issuing the requested permanent injunction.

## CONCLUSION & ORDER

For the reasons above, IT IS ORDERED that Defendants' Motion for Partial Summary Judgment is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Partial Summary Judgment shall be GRANTED IN PART AND TAKEN UNDER ADVISEMENT IN PART. The motion is GRANTED to the extend that Plaintiff's Motion for Partial Summary Judgment seeks dismissal of Defendants' Counter-Claims, and Defendants' Counter-Claims are hereby DISMISSED WITH PREJUDICE. With respect to the remaining relief sought in Plaintiff's motion, the issuance of a permanent injunction, the motion is taken under advisement. Although the Court concludes that Plaintiff has established that it is entitled to a permanent injunction, the Court seeks additional briefing, as detailed above, before making a final ruling with respect to the terms of the permanent injunction that shall be issued.

IT IS SO ORDERED.

                            S/Sean F. Cox
                            Sean F. Cox
                            United States District Judge

Dated: May 27, 2008

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 27, 2008, by electronic and/or ordinary mail.

                            S/Jennifer Hernandez
                            Case Manager